## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Derek A. Smith,

    Plaintiff

    v.

Lerner, Sampson & Rothfuss, L.P.A.
c/o Richard M. Rothfuss
120 East Fourth Street, 8th Floor
Cincinnati, OH  45202

and

BAC Home Loans Servicing, LP
Fka Countrywide Home Loans
Servicing L.P.
7105 Corporate Drive, Mail Stop
PTX-C-35
Plano, TX  75024
and

Shellie Hill
3911 Pebble Creek Lane
Amelia, Ohio  45102

And Mary Kist
Address not known at this time

and

Mortgage Electronic Registration Systems,
Inc.
c/o CT Corporation System
1300 East Ninth Street
Cleveland, OH 44114

and

Trina Harrington
Negotiator BAC Home Loan Servicing

Civil Action No.

Judge:

Magistrate Judge:

**Complaint for Money Damages
and Other Relief**


**Jury Demand Endorsed Hereon**

Page 1

c/o BAC Home Loan Servicing, LP
Fka Countrywide Home Loans
Servicing L.P.
7105 Corporate Drive, Mail Stop
PTX-C-35
Plano, TX  75024

Residence Address at this time unknown

    Defendants.

## I. __Preliminary Statement__

Plaintiff institutes this action for actual damages, statutory damages, attorney fees, punitive damages and costs of this action against Defendants Lerner, Sampson, & Rothfuss ("LSR"), BAC Home Loan Servicing, LP ("BAC"), Shellie Hill, Trina Harrington, Mary Kist, Mortgage Electronic Registration Systems, Inc ("MERS") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.,* ("FDCPA"); violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act 18 U.S.C. § 1961, *et seq.;* violations of Ohio's Consumer Sales Practices Act, R.C. 1345.01, ("CSPA"); falsification, R.C. 2921.13(G); Breach of Contract; Quiet Title; Wrongful Foreclosure; Civil conspiracy to Commit Fraud; and Negligent and Intentional Misrepresentation.

## II. __Jurisdiction and Venue__

1. This Court has federal question jurisdiction for the First Count under the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. §§1331 and 1337.

2. This Court likewise has federal question jurisdiction for the Second Count under RICO, 18 U.S.C. §1964(a) & (c), 28 U.S.C. §1331, and 28 U.S.C. §1337.

3.This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. §1367.

4. The actions and harms stated herein occurred in Geauga and other counties in the Northern District of Ohio, within this Court's venue.  Venue is therefore proper in this Court.

## III. <u>Parties</u>

5. Plaintiff, Derek A. Smith, is a natural person currently residing within this Court's jurisdiction at 147 Lakeview Lane, Chagrin Falls, OH  44022.

6. Defendant BAC is a national association and the successor, by merger, to BAC Home Loans Servicing, LP, which was formally known as Countrywide Home Loans Servicing, LP.

7. Defendant LSR is a legal professional association (law firm) that represented BAC in a wrongful foreclosure action against Plaintiff.

8. Defendant MERS is a company that received assignment as nominee in a mortgage in a certain loan transaction, and later purported to assign an interest in the mortgage to other purported successors in interest.

9. Defendant, Shellie Hill**,** is a natural person who was and, on information and belief, is still employed by Defendant LSR.

10. Defendant Mary Kist is a natural person who, on information and belief, was employed either by LSR or BAC

10. Defendant Trina Harrington is a natural person who was, and on information and belief, is employed as a "negotiator" by BAC.

11. At all times relevant to this transaction, Plaintiff Derek A. Smith was and is a **Consumer** within the meaning of 15 U.S.C. §1692a(3).

12. At all times relevant to this transaction, Plaintiff Derek A. Smith was and is a **Consumer** within the meaning of R.C. §1345.01(D).

13. At all times relevant to this transaction, Defendant LSR was and is a **Debt Collector** within the meaning of 15 U.S.C. § 1692a(6), as it regularly collects or attempts to collect debts owed or due another. *Heintz v. Jenkins*, 514 U.S. 291 (1995).

14. At all times relevant to this transaction, Defendants BAC and Trina Harrington were and are **Debt Collectors** within the meaning of 15 U.S.C. § 1692a(6), as they regularly collect or attempt to collect debts owed or due to another.

15. At all times relevant to this transaction, Defendants LSR, MERS, Shellie Hill, Mary Kist, and Trina Harrington were and are **Suppliers** within the meaning of Ohio Rev. Code § 1345.01(C), as they are each engaged in the business of effecting consumer transactions.

16. At all times relevant to this transaction, Defendant LSR is and was a **person** as defined under RICO in 18 U.S.C. § 1961(3) (which "includes any individual or entity capable of holding a legal or beneficial interest in property").

17. At all times relevant to this transaction, Defendant BAC was and is a **person** as defined under RICO in 18 U.S.C. §1961(3).

18. At all times relevant to this transaction, Defendants Shellie Hill and Mary Kist and was a **person** as defined under RICO in 18 U.S.C. § 1961(3).

19. At all times relevant to this transaction, Defendant MERS is and was a **person** as defined under RICO in 18 U.S.C. § 1961(3).

20. At all times relevant to this transaction, Defendant Trina Harrington is and was a **person** as defined under RICO in 18 U.S.C. § 1961(3).

## IV. <u>Factual Allegations</u>

21. Plaintiff incorporates herein by this reference all other allegations of this Complaint as though fully rewritten herein

22. On May 14, 2013 the Court of Common Pleas of Geauga County, in Foreclosure Case Number 10F000047 overruled Mr. Smith's Motion for Relief from Judgment and Vacated the Stay of Execution.

23. The ruling was based on pleadings, exhibits to pleadings, assignments, alonges and affidavits filed by LSR and prepared by LSR on behalf of and as agent for BAC in support of BAC's claim to a right to foreclosure on the mortgage and judgment on the note

24. The judgment from which relief was sought was a judgment in foreclosure brought by BAC through its counsel of choice: LSR.

25. On information and belief, the loan was originated to be sold as a security on the secondary market and was sold as part of that securitized process on the secondary market within 3 months of origination

26. On information and belief, the loan was sold to Freddie Mac who through its process sold interests in the loan as collateralized debt obligations on the secondary market

27. On information and belief, Capital One Home Loans, identified as the payee on the note, was obligated to and did, as part of the transaction with Freddie Mac, deliver the note endorsed in blank and the original mortgage to either Freddie Mac or it the bank with which it had a custodial agreement

28. The statements in the pleadings, assignments, allonges, and affidavits were false because the entities allegedly assigning and endorsing in fact had no interest in either the note or mortgage

The assignment and allonge were created and made in the collection of a debt.

29. The statements were false in the following respects:

   a. That BAC Home Loan Servicing was the holder of the note upon which foreclosure was sought

   b. That BAC Home Loan Servicing had the rights of a Lender

   c. That MERS, as nominee for Capital One Home Loans, LLC conveyed an interest in a mortgage to BAC Home Loans Servicing on 1/19/2010, when in fact there was no conveyance at that time and the document was created for litigation at the LSR law office by LSR employees

   d. That the allonge filed with the court was attached to the original note and that the original note was endorsed by Bank of America NA to BAC, when in fact the allonge was not attached to the original note and was created for purposes of litigation either by Bank of America NA, BAC, MERS, or LSR and its employees, or all of them acting in concert

   e. That the allonge served to endorse to BAC the Interest in the note in spite of the fact that  there was no endorsement by the payee

f.That BAC had an interest in the note and mortgage and the right to foreclose

30. Shellie Hill and Mary Kist, on information and belief, used the LSR computer systems to assist them in executing the assignment and the allonge

31. On information and belief, Shellie Hill and Mary Kist and LSR received communications from BAC and MERS that directed them to make, record, and file the assignment and prepare the allonge

32. Defendants Shellie Hill and Mary Kist knew that Capital One Home Loans did not have an interest in the note or mortgage on the date of the assignment or at the time of the making of the allonge

33. On date of the assignment defendant Shellie Hill, purporting to be an assistant secretary and vice president of defendant MERS, executed the assignment in Hamilton County, Ohio

34. Shellie Hill was not an employee of Defendant MERS on the date of the assignment

35.On information and belief, Mary Kist was not an employee of Bank of America, NA at the time that the allonge was made

36. On information and belief, Mary Kist did not have the original note in her possession and did not attach the allonge to the original note and knew that the allonge was created and signed by her to mislead the Court of Common Pleas of Geauga County and the Plaintiff

37. LSR and its employees knew that the allonge was not in fact attached to the original note

Page 7

38. LSR and its employees falsely represented to the Court in Geauga County, the Geauga County Recorder, and to Derek Smith that the assignment and allonge were genuine transactional documents

39. Defendant's tortious conduct, resulted in the judgment for execution rendered on May 5, 2013

40. The statements in the assignment and allonge were false statements, sent through the mails, and were made to influence a public servant, to wit, the judge in the foreclosure case, and the county recorder in the performance of their duties.

41. As a result of the judgment, made in reliance of the Assignment and allonge, BAC obtained a foreclosure judgment in its favor on Mr. Smith's residence at 147 Lakeview Lane, Chagrin Falls, OH 44022 ("the Home").

42. As a result of the judgment, BAC, acting through LSR, obtained an order of sale on the Home.

43. LSR, after obtaining the judgment, on 5/14/13, Made a deposit on an alias order of sale (7/8/13); caused an alias Praecipe for order of sale without appraisal to be filed (7/8/13), caused an alias order of sale to be issued to the Geauga County Sheriff (7/11/13), and a notice of Sherriff sale to be filed (9/20/13)

44. At the time of the events described in the foregoing paragraphs, Mr. Smith lived in the home with his wife and young children.

45. To protect his family and his home, Mr. Smith filed for debt relief under Chapter 13 of the Bankruptcy Code.

46. Mr. Smith had no other debt at the time that he filed for bankruptcy relief; the execution on the foreclosure judgment was the sole reason for seeking debt relief.

47. At the time that the foreclosure complaint was filed, Mr. Smith was current on his mortgage payments to BAC

48. BAC created a delinquency in November, 2009 by making an unauthorized and impermissible payment on a $17,000.00 assessment appearing on GEAUGA County ('the County") records for sewer upgrades.

49. The assessment was a structured assessment by the county anticipated to be paid over the course of 15 years.

50. Mr. Smith, prior to the erroneous and unlawful payment of the assessment by BAC, was negotiating a payment arrangement with the county.

51. Once it had paid the assessment, BAC refused to accept regular mortgage payments, demanding instead payments sufficient to cover the regular principal and interest payment plus 1/12 of the erroneously paid assessment.

52. It was impossible at that moment for Mr. Smith to pay the new payment demand.

53. Mr. Smith spent hours and days and months on the telephone attempting to resolve the issue.

54. During the time Mr. Smith was attempting to resolve the error with BAC, and unable to pay the new demand, Mr. Smith missed one regular payment.

55. On January 20, 2010, Mr. Smith sent in $2,500.00, an amount sufficient to pay the amount due for the current month and the prior month , but the payment was rejected and returned to Mr. Smith on January 25, 2010 on the grounds that it was not sufficient to cover the regular payment plus the erroneously paid assessment.

56. BAC refused to accept the correct payment, created an artificial delinquency, and refused to correct its error

57. On January 28, 2010, Mr. Smith received personal service of the foreclosure complaint filed BAC in the GEAUAGA County Court of Common Pleas ("the Foreclosure").

58. The Foreclosure had been filed on January 19, 2010.

59. On the same day he received service, Mr. Smith contacted BAC by telephone in further attempt to resolve the issue and protect his home and family.

60. BAC informed him that his options were to pay the full amount then due or enter into a restructuring  arrangement that would bring the loan current.

61. The BAC representative advised Mr. Smith that BAC would review the account and compile a repayment plan.

62. On February 2010, BAC sent Mr. Smith a notification that it required a payment of over $19,000.00 in order to allow reinstatement of the loan.

BAC promised to send a restructured payment plan but failed to do so

63. In March 2010, Mr. Smith contacted BAC begging for the opportunity to make his mortgage payments and resolve the issues with BAC.

64. BAC stated it would send him forms for the "Making Homes Affordable" program, which it would send in two weeks and process within three to four weeks of receipt.

65. Mr. Smith, in the course of that March 2010 conversation, protested that BAC was foreclosing on his home while he was working so hard with BAC to resolve the issue caused by the error of BAC.

66. In that same March 2010 conversation, BAC informed Mr. Smith that it would not move forward with the foreclosure; BAC informed him that he need only inform the court that he was "in the program."

67. BAC acknowledged its error and stated that it would be corrected by a loan restructuring.

68. In that same March 2010 conversation, Mr. Smith informed BAC that he was receiving solicitations from attorneys as a result of the filing of the foreclosure, and asked if he needed to defend the foreclosure while working with them to resolve the issue.

69. BAC urged Mr. Smith not to get assistance from an attorney, as that would be a waste of time and money and everything was being worked out.

70. Mr. Smith relied on the representations of BAC that it would not foreclose while he was working with it to resolve the issue.

71. The reliance was reasonable, as the statements were assurances about specific conduct that BAC would refrain from taking.

72. The statements were false.

73. BAC knew the statements were false, as it continued to prosecute the foreclosure case, even as it was making the statements and did nothing to stop the prosecution of the foreclosure case.

74. Mr. Smith believed the statement of BAC that an attorney was not necessary.

75. Mr. Smith relied on the statement of BAC that an attorney was not necessary and refrained from seeking counsel as a result.

76. Mr. Smith's reliance was justifiable because BAC was in control of the process and it was within its power to cease prosecuting the foreclosure.

77. BAC's representations to Mr. Smith were false.

78. BAC knew they were false but Mr. Smith did not.

79. Mr. Smith was injured as a result of the false representations of BAC in that he refrained from getting an attorney until a judgment had been entered, and ultimately incurred substantial expense in an effort to overturn the judgment, and filed for bankruptcy to prevent execution on the judgment.

80. Though BAC stated in March 2010 that it would send documents to initiate the loan modification process, it did not do so, and by May 2010, still had not done so.

81. In May 2010, Mr. Smith again contacted BAC to attempt to make payments.

82. In the May 2010 conversation, BAC told Mr. Smith it would not accept payments because of the negative escrow balance and because of the foreclosure.

83. In the May 2010 conversation, Mr. Smith once again responded to all of the "prequalification questions" regarding the "Making Home Affordable" program and BAC stated that it would send an application for the program.

84. On a subsequent telephone call to BAC in May, BAC told Mr. Smith that it would send a "reinstatement evaluation" in order for BAC to assess his ability to simply reinstate the mortgage.

85. BAC, in May 2010, sent Mr. Smith a bill for $30,000 to reinstate the mortgage, but when he called for an explanation, no one could explain it to him.

86. At the conclusion of the May 2010 telephone discussion regarding the reinstatement, BAC told Mr. Smith that his best option was to apply for the Making Home Affordable program.

87. In May 2010, BAC again assured Mr. Smith that as long as was applying for the Making Home Affordable program, the foreclosure would not proceed.

88. BAC in the May 2010 conversation, in response to specific inquiry by Mr. Smith, told Mr. Smith that he did not need an attorney, and that rather than wasting funds on an attorney he should set them aside to apply to his mortgage payment.

89. By July 2010, BAC still had not sent the Making Home Affordable application to Mr. Smith, so he then made numerous calls in July 2010.

90. By July 2010, Mr. Smith was emphatic that he insisted on making his mortgage payments and reaching some resolution on the mortgage issue.

91. In July 2010, Mr. Smith reached Trina Harrington, identified as a "senior negotiator."

92. Trina Harrington admitted that the critical problem was the negative escrow account resulting from BAC erroneously paying the sewer assessment; and assessment that was not then due and anticipated payment over a long period of time.

93. Mr. Smith emphasized to Trina Harrington, as he had emphasized to BAC for months, that the assessment was not due and that he had made arrangements with the county to pay that over the long term with no penalty or interest.

94. BAC refused to correct the error or to make any accommodation to Mr. Smith to remedy the harm caused by its error.

95. Trina Harrington told Mr. Smith that the remedy would lie in a restructuring of the loan through a Making Home Affordable application.

96. Mr. Smith, in the conversation of July 2010, expressed concern about the foreclosure and Ms. Harrington stated that BAC would take no action in the foreclosure case while Mr. Smith was working to resolve the issues caused by the erroneous escrow payment.

97. On Wednesday, July 21, 2010 at 10:36 a.m. Trina Harrington made assurances in writing by e-mail that "as long as it's in the modification process we will continue to postpone the sale."

98. BAC did not postpone the sale, and, in fact opposed efforts by Mr. Smith to prevent the sale

99. Trina Harrington specifically stated that BAC would not proceed with the foreclosure. Ms. Harrington told Mr. Smith that he need only show the court the Making Home Affordable Paperwork if the court made an inquiry; she said that would stop the foreclosure from occurring.

100. Between July 10 and August 7, 2010, BAC sent four to six virtually identical Making Home Affordable application packets.

101. In August 2010, in a series of conversations with BAC, Mr. Smith was given a variety of payment demands that, if paid, would bring the loan current and stop the foreclosure.

102. The payment demands, at various times that month, were $9,284.80; $12,766.00 and $13, 638.00 with no explanation for the differences in amounts.

88. Mr. Smith agreed to the offer, but sought assurance in writing that the payment of the specified amounts, whichever was the correct amount, would indeed bring the loan current and stop the foreclosure.

103. BAC refused to put the offers in writing.

104. In August 2010, BAC employee Cherise Mejia recommended to Mr. Smith that if he paid one of the foregoing large amounts, BAC would waive fees, but the escrow shortage would remain, resulting in a monthly payment of $3,500.00.

105. Cherise Mejia stated that with a $3,500 monthly payment, Mr. Smith's loan would cause the loan payment to be above "standard ratios" and that would cause him to qualify for the Making Home Affordable Program.

106. Cherise Majia informed Mr. Smith that this option, the two-step process of making a large lump sum payment, then accepting an inflated regular payment of $3,500/month was the only way that Mr. Smith could qualify for a Making Home Affordable plan.

107. Cherise Mejia stated in the course of that conversation that she had checked with the escrow department and confirmed that the source of the problem was the erroneous payment of the sewer assessment.

108. Cherise Mejia admitted that BAC refused to correct the error.

109. Mr. Smith accepted Cherise Mejia's offer to proceed as set forth above, and requested that the offer be made in writing, but Cherise Mejia refused to do that.

110. On August 20, 2010, Mr. Smith again contacted BAC about the offer, again emphasized that he accepted it, but wanted a written statement of the bargain.

111. In that conversation, BAC confirmed the offer and agreed to send it in writing.

112. On August 23, 2010, in response to demand by telephone from Mr. Smith, BAC Agreed to send confirmation of the offer by fax.

113. On August 25, 2010, upon Mr. Smith again calling to emphasize his agreement and seek written confirmation of the agreement, BAC informed Mr. Smith that "Freddie Mac" policies prevented BAC from keeping its promise.

114. Mr. Smith retained an attorney who, from September 20, 2010 through May 14, 2013 sought to vacate the judgment in foreclosure and represent Mr. Smith in a loan modification process.

115. BAC did not negotiate in good faith in this process, as it knew that Mr. Smith did not qualify for a Making Home Affordable modification, and that is the only type of modification it would consider, in spite of the fact that the problem was caused by its error.

116. On May 14, 2013, the Court, acting upon the false information in pleadings and related documents filed by LSR as counsel for BAC, denied Mr. Smith's motion for relief from judgment and vacated the stay of execution, allowing BAC to execute on its fraudulently obtained judgment.

117. On July 11, 2013, the alias order of sale was issued to the GEAUGA County Sheriff, with the sale set for October 17, 2014.

118. On October 16, 2013, Mr. Smith filed for bankruptcy court protection.

119. On January 6, 2014, BAC, through its counsel LSR,  objected to plan confirmation claiming that BAC "holds the mortgage lien on debtor real property known as 147 Lakeview Lane, Chagrin Falls, OH  44022.  The mortgage loan is in default for the month of (sic) and subsequent months, resulting in an estimated arrearage of $135,379.84 through the payment."

120. This statement, filed electronically and therefore through use of wires, clearly made to influence a public servant, the Bankruptcy Judge, in the performance of her duty, was patently false.

121. BAC and LSR knew the statement was false in that the amount stated as due was excessive.

122. BAC and LSR knew the statement was false in that it was not the owner of the mortgage and not entitled to payment on the note

123. BAC and LSR knew that it was merely the servicer for the loan long since sold to Freddie Mac.

124. Mr. Smith incurred and paid obligations for attorney fees in excess of $5,000.00 for representation in the bankruptcy court.

## V. <u>First Count-FDCPA</u>

125. Plaintiff incorporates herein by this reference all other paragraphs of this Complaint as though fully rewritten herein.

126. Plaintiff purchased his home through a mortgage loan through Capital One Home Loans, LLC.

127. The note, payable to Capital One Home Loans, LLC, is a debt within the meaning of the FDCPA, 15 U.S.C. §1692a(5), as it was an alleged obligation of Plaintiff to pay money in return for the loan to purchase his primary residence

128.   Defendants LSR's and BAC's conduct in the foreclosure,  including opposing Mr. Smith's motion for relief from judgment with the use of false statements and false evidence constitute a false, deceptive, and/or misleading practice in an attempt to collect a debt, in violation of the FDCPA, 15 U.S.C. § 1692e

129. Defendant LSR and BAC conduct in filing with the Bankruptcy Court false statements designed to prevent plan confirmation and interfere with his Bankruptcy Court Protection constitute a false, deceptive, and/or misleading practice in an attempt to collect a debt, in violation of the FDCPA, 15 U.S.C. § 1692e

130.    Plaintiff has suffered emotional and psychological distress as a result of Defendant LSR's and BAC's actions.

131. Defendants LSR and BAC are liable, jointly and severally to Plaintiff under this Count for its FDCPA violations in an amount equal to or greater than: actual damages in the amount in excess of $5,000 for each of Defendants' violations of the FDCPA, 15 U.S.C. § 1692k(a)(1); damages for emotional and psychological distress; statutory damages in the amount of $1,000.00; 15 U.S.C. § 1692kz9sz092)(A); and attorney's fees and costs of this action, 15 U.S.C. §1692k(a)(3).

## VI. <u>Second Count-RICO</u>

132.    Plaintiff incorporates all other paragraphs of this Complaint by reference as though fully rewritten herein.

133.    Defendants are liable to Plaintiff, jointly and severally under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, *et seq.,* ("RICO").

134. LSR, BAC, MERS, **Shellie Hill**, and Mary Kist assisted in, implemented, and/or took part in the actions described herein, which constitute a pattern of corrupt activity.

135. LSR, BAC, MERS and **Shellie Hill** and Mary Kist used the Geauga County, Ohio Common Pleas Court, Geauga County Recorder, the Geauga County Clerk of Courts, the Geauga County Sheriff, and United States Bankruptcy Court in furtherance of their actions described herein

136. LSR, BAC, MERS, Mary Kist, and **Shellie Hill** acted with other entities with respect to Plaintiff's loan who are and were each a **person** as defined in 18 U.S.C. § 1961(3) at all times relevant to this transaction.

137. The ongoing association of BAC and its agents and employees, LSR and its agents and employees, MERS and its agents and employees, **Shellie Hill, Mary Kist,** and other entities are linked by their actions described herein sufficiently to form an **enterprise** as defined in 18 U.S.C. § 1961(4).

138. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** use of Geauga County, Ohio Common Pleas Court, Geauga County, Ohio Recorder, Geauga County, Ohio Clerk of Courts, Geauga County Sheriff and the United States Bankruptcy Court in furtherance of their actions sufficiently link them to an enterprise as defined in 18 U.S.C. § 1961(4).

139. LSR, BAC, MERS, Mary Kist and **Shellie Hill** are and were each a legal organization or natural person that engaged in activities which affect interstate commerce at all times relevant to this transaction.

140. LSR, BAC, MERS, Mary Kist and **Shellie Hill** were engaged in a **racketeering activity** as defined in 18 U.S.C. § 1961 at all times relevant to this transaction.

141. LSR, BAC, MERS, Mary Kist and **Shellie Hill** unlawfully executed, or caused to be executed, and unlawfully recorded, or caused to be recorded, the assignment that formed the basis for the order to vacate the stay and execute on the foreclosure sale of Mr. Smith's home.

142. LSR, BAC, MERS, Mary Kist and **Shellie Hill**, as of the date of this Complaint, have not vacated the fraudulently obtained judgment and have not dismissed the foreclosure case, and as it is unlikely that they will correct this misconduct, the misconduct will continue indefinitely into the future.

143. As it is only the bankruptcy stay that now protects the home from foreclosure, and as that is of limited duration, Mr. Smith and his family are in imminent danger of losing their home.

144. LSR, BAC, MERS, Mary Kist and **Shellie Hill** are and were engaged in a **pattern of racketeering activity** as defined in 18 U.S.C. § 1961(5) at all times relevant to this transaction.

145. LSR, BAC, MERS, Mary Kist and **Shellie Hill** communicated with Plaintiff, with each other, and with the Geauga County Ohio Common Pleas Court, Geauga County Ohio Recorder, and the Geauga County Ohio Clerk of Court, and the

Geauga County Sheriff and the United States Bankruptcy Court by mail, telephone, wire, electronic mail communications within the ten year period immediately preceding the date of this Complaint

146. LSR, BAC, MERS, Mary Kist and **Shellie Hill** executed the following acts, which were devised and implemented as a scheme to defraud Plaintiff:

      a. Drafting and executing the fraudulent assignment

      b. Recording the fraudulent assignment

      c. Drafting and Filing fraudulent allonge to mislead the court and Mr. Smith that it BAC was the holder and owner of the note and owner of the mortgage and entitled to foreclose on Mr. Smith's Home

147. All of those actions were part of a scheme or artifice to defraud Plaintiff. Defendants' conduct described herein constitutes unlawful conduct, including that conduct being devised and implemented to defraud Plaintiff.

148. LSR, BAC, MERS, Mary Kist and **Shellie Hill**'s representations to Plaintiff, Geauga County Ohio Common Pleas Court, Geauga County Ohio Recorder, and the Geauga County Ohio Clerk of Court, and the Geauga County Sheriff and the United States Bankruptcy Court about the facts and documents upon which that document relied, were not true.

149. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** representations were material to the scheme to defraud Plaintiff.

150. LSR, BAC, MERS, Mary Kist and **Shellie Hill** communicated their representations using the United States Postal Service.

151. LSR, BAC, MERS, Mary Kist and **Shellie Hill** communicated their representations using wire communications.

152. LSR, BAC, MERS, Mary Kist and **Shellie Hill** communicated their representations to Plaintiff, and the reference others, more than four times using interstate commerce.

153. LSR, BAC, MERS, Mary Kist and **Shellie Hill** individually or collectively, sent Plaintiff more than four letters using the Postal Service during the times relevant to this claim.

154. BAC called Plaintiff more than four times using the wired telephone service during the times relevant to this claim.

155. LSR, BAC, MERS, Mary Kist and **Shellie Hill** communicated with Plaintiff, his attorney, and/or the Geauga County Ohio Common Pleas Court, Geauga County Ohio Recorder, and the Geauga County Ohio Clerk of Court, and the Geauga County Sheriff and the United States Bankruptcy Court more than four times using the Interned during the times relevant to this claim.

156. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** actions constitute a pattern of conduct.

157. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** actions, both individually and collectively, among themselves, and with Plaintiff, his attorneys, and Geauga County Ohio Common Pleas Court, Geauga County Ohio Recorder, and the Geauga County Ohio Clerk of Court, and the Geauga County Sheriff and the United States Bankruptcy Court constitute a pattern of conduct.

158. LSR, BAC, MERS, Mary Kist and **Shellie Hill** used false or fraudulent pretenses, representations, or promises as part of a scheme or artifice to defraud Plaintiff

159. LSR, BAC, MERS, Mary Kist and **Shellie Hill** used false or fraudulent pretenses, representations, or promises as part of a scheme or artifice to defraud the GEAUGA County Ohio Common Pleas Court and the United States Bankruptcy Court.

160. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** actions described herein constitute Fraud by Wire, Radio, or Television under 18 U.S.C. §1343.

161. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** actions constitute Fraud and Swindles under 18 U.S.C. § 1341.

162. LSR, BAC, MERS, Mary Kist and **Shellie Hill**, both individually and collectively, were related in that their actions had similar purposes, results, participants, victims and methods of commission.

163. The actions of LSR, BAC, MERS, Mary Kist and **Shellie Hill,** both individually and collectively, were and are continuous and pose a threat of repetition extending indefinitely into the future.

164. LSR, BAC, MERS, Mary Kist and **Shellie Hill** have executed, or caused to be executed, other affidavits based on false documents in, Ohio Courts to support executions on foreclosure judgments including *BAC v. Banks,* 10-CV-013973 (Heartland Home Finance, September 2010 assignment; business dissolved in April 2008), *BAC v. Lester,* 10-CV-012933 and *BAC v. White,* 10-CV-014769, (America's Broker Conduit, February and March 2010 assignments; business

dissolved in 2008), and *BAC v. Bozeman,* 10-CV-013919, and *BAC v. Elisco,* 10-CV-013862, (Countrywide Bank, FSB, September 2010 assignments; ceased as bank in 2009).

165. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** actions, both individually and collectively, constitute their regular way of conducting their ongoing business,

166. Upon belief, Plaintiff alleges that it is likely that LSR, BAC, MERS, Mary Kist and **Shellie Hill** will continue to submit affidavits in Courts of Common Pleas and Federal Courts in Ohio that are false statements based on unlawful and/or fraudulent assignments, or continue to fail to take corrective action to notify courts of decisions and judgments based on fraudulent assignments

167. LSR, BAC, MERS, Mary Kist and **Shellie Hill's** actions in this Count constitute a scheme to defraud Plaintiff.

168. LSR, BAC, MERS, Mary Kist and **Shellie Hill** took the actions described in this Count in furtherance of a scheme to defraud Plaintiff, and took the actions in an effort to defraud Plaintiff of money and property.

169. BAC and Trina Herrington  attempted to defraud the Federal Government through manipulation of the HAMP program, thus also depriving the Federal Government of money or property.

170. LSR, BAC, MERS, and **Shellie Hill's** communications with Plaintiff and the Geauga County Ohio Common Pleas Court, Geauga County Ohio Recorder, and the Geauga County Ohio Clerk of Court, and the Geauga County Sheriff and the United States Bankruptcy Court occurred as part of a common plan or scheme to

defraud plaintiff and to present false statements to public officials to influence them in the conduct of their duty

171. LSR, BAC, MERS, and **Shellie Hill**, each individually, conducted or participated in the conduct or the affairs of the other defendants as described herein.

172. LSR, BAC, MERS, Mary Kist and **Shellie Hill** took the actions defined in this Count willfully, intentionally, and with knowledge of their actions, and with the intent to defraud Plaintiff.

173. LSR, BAC, MERS, Mary Kist and **Shellie Hill** took the actions defined in this Count with the knowledge that their actions would result in the taking of Plaintiff's property through foreclosure and sheriff sale, and they could not establish the truth of the assignment and allonge that formed the basis for the execution on the judgment.

174. LSR, BAC, MERS, Mary Kist and **Shellie Hill** took the actions defined in this Count with the knowledge that their actions would likely result in them defrauding Plaintiff.

175. LSR, BAC, MERS, Mary Kist and **Shellie Hill** took the actions defined herein with intent to and with knowledge that their actions would interfere with plan confirmation and continued bankruptcy court protection

176. LSR, BAC, MERS, Mary Kist and **Shellie Hill** took the actions defined herein with callous and reckless indifference to the rights of others.

177. LSR, BAC, MERS, Mary Kist and **Shellie Hill** participated in the scheme to defraud Plaintiff with callous and reckless indifference to the rights of others.

178. Plaintiff was injured by Defendants' RICO violations, including by having to file for Bankruptcy Court Protection to prevent the execution on the unlawfully obtained judgment, and the threat that the execution on the judgment will take place once the bankruptcy case terminates.

179. LSR, BAC, MERS, Mary Kist and **Shellie Hill** were the actual and proximate cause of Mr. Smith's injuries and each are liable to him under this Count.

180. Mr. Smith is entitled to damages, treble damages, punitive damages, attorney fees, and costs for LSR, BAC, MERS, Mary Kist and **Shellie Hill's** RICO violations.

## VII. Third Count-CSPA for FDCPA Violations

181. Plaintiff incorporates herein by this reference all other paragraphs of this Complaint as though fully set forth herein.

182. At all times relevant to this claim, LSR, BAC, MERS, Mary Kist and **Shellie Hill** were and are subject to the Ohio Consumer Sales Practices Act, R.C. §1345.01, *et seq.*

183. Violating the FDCPA has been determined by a court of this state to violate CSPA, and that decision was made available for public inspection under Ohio Rev. Code § 1345.05(A)(3) prior to this consumer transaction. *Becker v. Montgomery Lynch,* PIF 10002153 (April 30, 2003) (http://www.opif.ag.state.oh.us/opifimages/PIF2153.pdf)

Page 26

184. Defendants' actions described in Count One and the Factual Allegations of this Complaint are each unfair and deceptive acts or practices in violation of Ohio's CSPA, Ohio Rev.Code §1345.02.

185. Defendants' actions described in Count One and the Factual Allegations of this Complaint are each unconscionable consumer sales acts or practices in violation of Ohio's CSPA, Ohio Rev. Code §1345.03.

186. Defendants' actions described in Count One and the Factional Allegations of this Complaint were committed with knowledge within the meaning of Ohio Rev. Code §1345.01(E).

187. Plaintiff's actual damages under the CSPA are equal to the total value of damages under the FDCPA.

188. Defendants are liable to Plaintiff, jointly and severally, in an amount equal to three times his actual damages under FDCPA, pursuant to Ohio Rev. Code §1345.09(B); $5,000 non-economic damages, pursuant to Ohio Rev. Code §1345.09(B); and attorney's fees and costs for this action, pursuant to Ohio Rev. Code §1345.09(F), for each violation of the CSPA.

## VIII. <u>Fourth Count—Falsification</u>

189. Plaintiff incorporates all prior paragraphs of this Complaint by this reference as though fully rewritten herein

190. Defendant LSR, its employees, and its client, Defendant BAC, and other enterprise member MERS, knowingly made a false statement in an assignment and an allonge to be filed in the Geauga County Court of Common Pleas designed to mislead the court as to right of BAC to execute on its judgment..

191. The false assignment and allonge were made with the purpose to mislead the Geauga County Judge in the performance of his official function within the foreclosure action.

192. Defendant LSR, at the behest of its client BAC, filed a pleading, based on false assignment and allonge, knowingly falsely alleging BAC's interest in the home that was the subject of the bankruptcy stay.

193. As a result of the false statement, Mr. Smith suffered damages in the amount of at least $5,000.00, and damages for emotional distress.

194. Accordingly, Defendants LSR, BAC are jointly and severally liable to Plaintiff for $5,000, damages for emotional distress, attorney's fees, the costs of this action, and other expenses incurred as a result of prosecuting this action. Ohio Rev. Code 2912.13(G).

## IX. Fifth Count-Civil Conspiracy

195. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully rewritten herein

196. Defendants BAC and LSR agreed to execute the false documents knowing they contained false representations.

197. Defendants' BAC and LSR conspired to commit the tort and crime of falsification

198. Defendants' BAC and LSR actions of conspiring to commit the crime and tort of falsification are an unlawful act, which was independent of the actual conspiracy. .

199. Defendants fraud in this case was committed in such a way that one party acting alone could not have accomplished it in that the participation of MERS, BAC, and the LSR were necessary to create the illusion of legitimate transactions to form the basis for the foreclosure action

200. As a result of Defendants' agreement to execute the Assignment and the resultant falsification, Mr. Smith suffered damages in excess of $5,000, and damages for emotional and psychological distress.

201. Defendants are jointly and severally liable to Plaintiff for an amount in excess of $5,000, damages for emotional and psychological distress, attorney's fees, the costs of the action and other expenses incurred as a result of prosecuting this action.

## X. Sixth Count-Breach of Contract

202. Plaintiff reasserts all prior paragraphs of this complaint as though fully rewritten herein

203. Plaintiff and BAC, through Trina Harrington and other employees of BAC, made mutual promises of forbearance

204. Plaintiff agreed to refrain from defending the foreclosure based on BAC's promises, in writing, that it would postpone the Sherriff sale as long as Mr. Smith was working with BAC to modify his loan.

205.    Plaintiff fully performed, and forbore to exercise his right to defend the foreclosure in reliance on BAC's promise that it would forebear to exercise a right to foreclosure sale

206.    BAC had a duty to perform based on mutual promises of forbearance, with Mr. Smith having fully performed

207.    BAC breached its duty to perform its part of the bargain and immediately upon receiving its judgment in foreclosure it sought to sell the home

208.    BAC further breached its duty when it actively sought to prevent Plaintiff's efforts to delay the sale so that he could continue to seek loan modification

209.    BAC further breached its duty when it filed an objection to confirmation in the Bankruptcy Court to prevent the Bankruptcy Court from confirming a plan that would prevent sale for at least the period of the Bankruptcy Case.

210.    BAC offered to waive fees, stop the foreclosure, and follow through with HAMP modification in return for payment of a lump sum and imposition of the 3,500/month monthly payment, which offer Mr. Smith accepted on the condition that the offer be made in writing

211.    BAC agreed to make that offer in writing and then failed to do so, instead moving forward with the foreclosure sale

212.    Mr. Smith was at the time he accepted the offer and the contract was formed,  ready, willing and able to perform his part of the bargain and BAC refused to do so, instead repudiating the contract and refusing to perform, thus breaching the contract

213.    BAC having made the offer and Mr. Smith having accepted it, BAC had a duty to perform and breached that duty when it failed to make the offer in writing and repudiated the contract

214.    Mr. Smith was injured by having to file for bankruptcy to prevent the imminent sale of his home by the Geauga County Sheriff.

## XI. Seventh Count-Quiet Title

215.    Mr. Smith incorporates herein by this reference all of the prior paragraphs of this pleading

216.    Mr. Smith claims an interest in the real estate which was the subject of the foreclosure action and which is his home by virtue of a Deed of Trustee dated March 10, 2006, filed March 14, 2006 as Official Record Volume No. 1788, Page 3186 in the Deed Records of Geauga County, Ohio

217. The legal description is :  Situated in the Village of South Russell, County of Geauga and State of Ohio: and known as being sublot No. 101 in the Bellwood Acres Subdivision No. 2 as shown by the recorded plat in Volume 6, Page 221 of Geauga County Records and being 125 feet front on the Easterly side of Lakeview Avenue and extending back of equal width 267.50 feet as appears by said plat, be the same more or less, but subject to all legal highways. Parcel No. 29-004730.  Property address 147 Lakeview Lane, Chagrin Falls, OH 44022

218.   BAC claims an interest by virtue of a fraudulent assignment and a fraudulent allonge

219. The interest claimed by BAC by virtue of the fraudulent assignment and allonge are adverse to the interest of Mr. Smith in his real property

220. BAC's interest is a cloud on Plaintiff's title and should be removed as set forth in Ohio Rev.Code §5303.01

## XII. Fraud and Misrepresentation

221. Mr. Smith incorporates herein by this reference all prior paragraphs of this pleading

222. Defendants knowingly false assignment, allonge, and statements, in the foreclosure court, to the county recorder, to the bankruptcy court and to Mr. Smith, including its statements as to its interest in the real estate, its right to be paid on the note, its ownership and status as holder on the note, BAC's statement that it would not exercise its right to sell the home constitute false statements intended to mislead Plaintiff to his injury

223. Plaintiff believed and relied upon the statements by defendants both orally and in writing

224. Plaintiff's reliance was reasonable given that the promisor was an established bank, doing a large business in mortgage servicing and acting with knowledge of its practices and procedures

225. Defendants knew the statements to be false and intended that Plaintiff, the Courts, the Recorder and other public officials should rely upon those statements

226. Defendants intended to mislead and did mislead plaintiff regarding its rights and regarding its intent to refrain from executing on the judgment in foreclosure and selling his home

227. As a result of the fraud and misrepresentation of Defendants, Plaintiff has been injured by suffering fear of losing his home and family stability and having to file a bankruptcy case to protect his home in family

228. Plaintiff's damages exceed $5,000.00 for legal fees, costs, and emotional distress damages, including anxiety, shame, humiliation and fear of losing his home and his ability to protect his family

## XIII. Wrongful Foreclosure

229. Plaintiff incorporates herein by this reference all of the prior paragraphs of this complaint.

230. Plaintiff filed a foreclosure action based on fraudulent documents created to appear to establish an interest in his real estate with a note never endorsed by the payee and with assignment and allonge created by LSR

231. The purported assignments had no transactional significance

232. The delinquency that formed the basis for the alleged default was created by BAC in paying an assessment not then due and then demanding a payment that far exceeded the true amount due

233. The foreclosure complaint falsely stated that BAC was the holder of the note, that it had a right to foreclose, and that there was a default in payment

234. Plaintiff proceeded with foreclosure sale when it was obligated to forebear from doing so

235. As a result of the wrongful foreclosure and foreclosure sale, Mr. Smith was forced to file for bankruptcy to protect his interest in his home and the safety of his family

236. That protection will only stay in place as long as the bankruptcy can stay in place

237. The Plan provides for the rights of BAC and Plaintiff to be litigated in Federal Court as follows: "The claim of BAC Home Loans LLP with respect to a mortgage on the principal residence described in Schedule A, and otherwise identified as loan Number  163259931, and which is the subject of the lawsuit filed in Geauga County Court of Common Pleas Case Number 10F000047 (the Loan) is subject to setoff by virtue of claims that Mr. Smith has against BAC Home Loans Servicing LLP. While Mr. Smith will fund the plan as though all amounts are due,  all distributions on behalf of BAC Home Loans Servicing LLP will be held in escrow by the trustee pending the outcome of anticipated litigation against BAC Home Loans Servicing LLP by Mr. Smith.  Once that action has been resolved and the rights of the parties are determined, then any distribution to which BAC Home Loans LLP may be entitled can be made, subject to any setoff to which Mr. Smith may be entitled.  During the pendency of the anticipated litigation, the payments made by Mr. Smith to the trustee will be deemed payments made to BAC Home Loans Servicing LP with payments credited accordingly on any accounts kept by BAC Home Loan Servicing, LLP, and its successors in interest, with regard to the  Loan.

238.  As only the Bankruptcy Stay stands as a protection to BAC's execution on its foreclosure judgment, Mr. Smith is in imminent danger of losing

Page 34

his home in the foreclosure absent relief provided by this court

239. Mr. Smith seeks damages in the form of all costs and fees incurred to bring this action and prosecute his claims arising from the wrongful foreclosure.

## XIV. Prayer for Relief

WHEREFORE, Plaintiff respectfully prays the Court:

240. Assume jurisdiction of this case

242. Award Plaintiff the maximum damages available under each Count

243. Award Plaintiff actual damages in the amount of $5,000, plus an amount a jury determines adequate to compensate Plaintiff for Emotional damages, pursuant to 15 U.S.C. §1692k(a)(1), 18 U.S.C. §1964(c), and Ohio Rev.Code §1345.09;

244. Award Plaintiff treble damages in the amount of $26,803.32, pursuant to Ohio Rev.Code §1345(B) and 18 U.S.C. §1964(c)

245. Award Plaintiff statutory damages in the amount of $1,000, pursuant to 15 U.S.C. §1692k(a)(2)(A);

246. Award Plaintiff non-economic damages in the amount of $5,000.00 pursuant to Ohio Rev. Code §1345.09(B);

247. Award Plaintiff attorney's fees and the costs of this action pursuant to 15 U.S.C. §1692k(a)(3), Ohio Rev.Code §1345.09(F), Ohio Rev. Code §2921.13(G), and 18 U.S.C. §1964(c);

248. Award Plaintiff punitive damages

249. Award Plaintiff actual damages in the amount of $5,000 under the Fourth

Count

250. Declare the mortgage of record void

251. Declare that that the alleged mortgage assignment signed by MERS is

void

252. Quiet title in the real estate in Plaintiff

253. Award damages for breach of contract; and

254. Award such other and further relief as the Court finds fair, just and

equitable, including further declaratory relief.

Respectfully Submitted,

/s/ Susan M. Gray

Susan M. Gray (0062356)
Attorney for Mr. Smith
Amtrust Bank Building, Suite 210
22255 Center Ridge Road
Rocky River, OH 44116
Tel. 440.331.3949
Fax. 440.331.8160
smgray@smgraylaw.com

**<u>Jury Trial Demanded</u>**

Plaintiff, through counsel, hereby requests a trial by jury on all issues so triable, pursuant to Fed.R.Civ. P. 38(b)

Respectfully Submitted,

/s/ Susan M. Gray

Susan M. Gray (0062356)
Attorney for Mr. Smith
Amtrust Bank Building, Suite 210
22255 Center Ridge Road
Rocky River, OH 44116
Tel. 440.331.3949
Fax. 440.331.8160
smgray@smgraylaw.com